IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 48,

          Case No. 3:25-cv-00875-AB

       Petitioner,

          OPINION & ORDER

   v.

AFFORDABLE ELECTRIC, INC.,

       Respondent.


Daniel Hutzenbiler
McKanna Bishop Joffe, LLP
1635 NW Johnson Street
Portland, OR 97209

Diana Winther
IBEW
15937 NE Airport Way
Portland, OR 97230

      Attorneys for Petitioner


1 – OPINION & ORDER

**BAGGIO, District Judge:**

Petitioner International Brotherhood of Electrical Workers Local 48 filed this petition to confirm an arbitration award against Respondent Affordable Electric, Inc. *See generally* Pet., ECF No. 1. Respondent has not appeared or otherwise taken any action in this matter. The Court entered default as to Respondent on August 25, 2025. Clerk's Entry of Default, ECF No. 17. Petitioner now moves for default judgment. Pet'r's Mot. Default J. ("Pet'r's Mot."), ECF No. 18. For the reasons below, the Court grants Petitioner's Motion in part.

## BACKGROUND

Petitioner represented eight of Respondent's employees in four underlying grievances relating to unpaid wages. Hutzenbiler Decl. ¶¶ 2, 9–12, ECF No. 19. Respondent, a member of the National Electrical Contractors Association ("NECA"), is a corporation engaged in the electrical construction industry. *Id.* ¶ 3; Pet. ¶ 7. During the relevant period, Respondent and its employees were bound by the terms of a written "Commercial/Industrial Agreement" ("the Agreement") through their respective memberships to NECA and the Petitioner labor union.[1] *See* Hutzenbiler Decl. ¶ 7; Hutzenbiler Decl. Ex. A. The Agreement established terms and conditions of employment with Respondent including compensation, Hutzenbiler Decl. Ex. A, at 15–24, and grievance and arbitration procedures, *id.* at 6–7. Regarding compensation, section 3.04(a) of the Agreement provides that "[e]mployees shall receive their checks on the job no later than one

---

[1] The Agreement "appl[ies] to all firms who sign a Letter of Assent to be bound by this Agreement." Hutzenbiler Decl. Ex. A, at 5, ECF No. 19-1. Petitioner does not offer such "Letter of Assent" signed by Respondent, but Petitioner introduced into the record meeting minutes of the Labor-Management Committee's October 11, 2024, meeting in which Respondent's officers participated in an arbitration process as provided by the Agreement. *See* Hutzenbiler Decl. Ex. G (Labor-Management Committee meeting minutes dated October 11, 2024), ECF No. 19-7. Because these meeting minutes show that Respondent participated through its agents in arbitration proceedings under the Agreement, the Court considers this sufficient evidence that Respondent assented to be bound by the terms of the Agreement.

2 – OPINION & ORDER

(1) hour before quitting time on Friday following the previous week worked." *Id.* at 16. Section 3.04(b) of the Agreement provides that "[a]ny worker laid off or discharged by the employer shall be paid all their wages immediately." *Id.* at 17. As to the Agreement's grievance and arbitration procedures, the Agreement provides for a "Labor-Management Committee of three representing the Union and three representing the Employers." *Id.* at 6. If a grievance arises, and if "duly authorized representative[s]" from each party are "unable to adjust any matter within 48 hours," the grievance would then be referred to the Labor-Management Committee. *Id.* at 7. All matters that reach the Labor-Management Committee are "decided by a majority vote." *Id.* Under the Committee's Guidelines, "[t]he decision of the Labor/Management Committee is considered to be an arbitration award; it is therefore enforceable in the Courts." Hutzenbiler Decl. Ex. B, at 3, ECF No. 19-2.

Between June 19, 2024, and August 9, 2024, Petitioner filed four grievances on behalf of eight of Respondent's employees. *See* Hutzenbiler Decl. Ex. C, ECF No. 19-3; Hutzenbiler Decl. Ex. D, ECF No. 19-4; Hutzenbiler Decl. Ex. E, ECF No. 19-5; Hutzenbiler Decl. Ex. F, ECF No. 19-6. On June 19, 2024, Petitioner filed the first grievance on behalf of employee Cecconi for not receiving his final paycheck on or before May 24, 2024. Hutzenbiler Decl. Ex. C, at 1. On July 26, 2024, Petitioner filed a second grievance on behalf of employee Johnston for only receiving eight hours of sick pay when he should have received ten hours. Hutzenbiler Decl. Ex. D, at 1. On August 9, 2024, Petitioner filed a third grievance on behalf of employee McGaw for being "shorted pay on two different checks" in May 2024. Hutzenbiler Decl. Ex. E, at 1. On August 26, 2024, Petitioner filed a fourth and final grievance on behalf of employees Verber, Bickford, Wycoff, Sadberry, Johnston, and Vierra for not "giving them their final paychecks" after the employees were laid off. Hutzenbiler Decl. Ex. F, at 1.

The Labor-Management Committee convened on October 11, 2024, to discuss the four grievances described above. *See generally* Hutzenbiler Decl. Ex. G (minutes from the October 11, 2024, Labor-Management Committee meeting). At the time of the meeting, the Labor-Management Committee consisted of four members representing labor and five members representing management. *Id.* at 1. Three of Respondent's officers (Jean-Wildy Malary,[2] Josette Malary, and Nancy Velez) were present and participated in the meeting. *Id.* As to the first grievance regarding employee Cecconi, the parties agreed that Respondent would "compensate [employee] Cecconi with a one-time lump sum payment of $4,684.68 . . . ." *Id.* at 2. As to the second grievance regarding employee Johnston, the parties agreed that Respondent would "compensate [employee] Johnston with a one-time lump sum payment of $1,500 . . . ." *Id.* As to the third grievance, the parties agreed that Respondent would "compensate [employee] McGaw with a one-time lump sum payment of $25,103.64 . . . ." *Id.* at 3. As to the fourth grievance, the parties agreed that Respondent would compensate employees Verber, Bickford, Wycoff, Sadberry, Johnston, and Vierra with "with a one-time lump sum payment of $360.36 . . . each." *Id.* The parties reduced these agreements to writing. *See* Hutzenbiler Decl. Ex. H, at 1–4 (signed grievance resolutions), ECF No. 19-8. Respondent has not made payments associated with these arbitration awards. Hutzenbiler Decl. ¶ 14.

## STANDARDS

Federal Rule of Civil Procedure 55 governs default judgments. Obtaining default judgment is a two-step process: entry of default and entry of judgment. Fed. R. Civ. P. 55(a)–(b); *Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009). First, under Rule

---

[2] The Labor-Management Committee meeting minutes refer to Jean-Wildy Malary and Jeanette Malary as "Jean-Wildy Mallory" and "Jeanette Mallory." *See* Hutzenbiler Decl. Ex. G, at 1.

4 – OPINION & ORDER

55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Second, under Rule 55(b)(2), upon application or motion by a party, the Court may enter judgment on the default. Fed. R. Civ. P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

## DISCUSSION

Petitioner moves for default judgment against Respondent because Respondent has not complied with final and binding arbitration awards. Pet'r's Mot. 5. The Court finds that Petitioner supports its claim for relief and therefore grants Petitioner's Motion in part. The Court does not find that Petitioner sufficiently shows that it is entitled to attorney fees.

## I.     Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court first finds that it has personal jurisdiction over Respondent in this case. Respondent is a corporation with a principal place of business in Oregon. *See* Hutzenbiler Decl. ¶ 3; *see also* Aff. of Service 1 (service effected at Respondent's registered agent located in Clackamas, Oregon), ECF No. 6. The Court also finds that it has subject matter jurisdiction over this matter. Petitioner brings this action under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), which grants

5 – OPINION & ORDER

federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties." This matter, brought by a petitioner labor organization representing former employees of Respondent, is such a case covered by the LMRA.

## II.   Procedural Requirements

The Court also finds that Petitioner satisfies the procedural prerequisites of Rule 55 and Local Rule 55. First, Petitioner moved for and was granted entry of default as to Respondent. Fed. R. Civ. P. 55(a); *see also* Pet'r's Mot. Entry of Default, ECF No. 15; Clerk's Entry of Default 1. Respondent, a corporation, has not appeared by a representative, so it is not entitled to written notice of the application for default judgment. Fed. R. Civ. P. 55(b)(2). Further, the Court finds that the relief sought in Petitioner's Motion is limited to what is demanded in its Petition. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also* Pet'r's Mot. 2 (requested relief); Pet. at 6–7 (Prayer for Relief). Having found procedural compliance, the Court now proceeds to Petitioner's Motion.

## III.   *Eitel* Factors

Petitioner moves the Court to enter default judgment against Respondent to "enforce[e] four arbitration awards . . . ." Pet'r's Mot. 1; *see also* Hutzenbiler Decl. Ex. H (signed grievance resolutions). The Court finds that the relevant factors favor default judgment.

A court may enter a default judgment at its own discretion. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe*, 616 F.2d at 1092. Courts look to seven factors in considering whether to enter a default judgment ("*Eitel* factors"):

6 – OPINION & ORDER

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation modified). In reviewing these factors, the Court accepts all well-pleaded factual allegations of the Petition as true except allegations regarding the amount of damages. *See TeleVideo Sys.*, 826 F.2d at 917–18.

While Petitioner does not analyze the *Eitel* factors, the Court proceeds with its own analysis and finds that the *Eitel* factors support granting default judgment. *See Swift Fin., LLC v. Alabar Constr., Inc.*, No. 2:18-CV-02009-SU, 2019 WL 654343, at *2 (D. Or. Jan. 30, 2019) ("Despite [the plaintiff's] failure to discuss the *Eitel* factors, the Court now analyzes those factors to determine whether to enter default judgment."), *report and recommendation adopted*, 2019 WL 653801 (D. Or. Feb. 15, 2019). The Court discusses each factor below.

A.      Prejudice to Petitioner

The first *Eitel* factor considers "the possibility of prejudice to the [petitioner] . . . ." *Eitel*, 782 F.2d at 1471. Here, Respondent has failed to participate in this matter,[3] and Petitioner lacks other means to recover from Respondent. Indeed, Petitioner tried collecting from Respondent through the available Labor-Management Committee arbitration process as outlined in the Agreement. *See* Hutzenbiler Decl. Ex. A, at 6–7 (grievance and dispute procedures under the Agreement). But "[t]o date, [Respondent] has failed to pay any of the penalties awarded to the bargaining unit members by the Labor-Management Committee." Hutzenbiler Decl. ¶ 14; *cf.*

---

[3] While Respondent has not participated in this matter, Respondent's President Jean-Wildy Malary appeared as a movant in this matter to seek additional time to obtain counsel. Movant Malary Mot. Extension of Time, ECF No. 7. The Court granted Movant's motion in part. Order, ECF No. 11. Respondent ultimately failed to obtain counsel. *See* Movant Malary Notice 1 ("[R]espondent has not been able to secure counsel . . . ."), ECF No. 13.

7 – OPINION & ORDER

*Bunge, S.A. v. Pac. Gulf Shipping (Singapore) Pte. Ltd.*, No. 3:19-CV-00491-SB, 2019 WL 8953358, at *3 (D. Or. Dec. 17, 2019) ("[The plaintiff] will suffer prejudice if the Court declines to enter default judgment, because [the plaintiff] complied with the Charter to resolve disputes by arbitration but [the defendant] has refused to pay the final arbitration award and [the plaintiff's] collection efforts have proven futile."), *report and recommendation adopted*, 2020 WL 1528250 (D. Or. Mar. 31, 2020). The Court therefore finds that this factor favors granting default judgment.

B.      Merits of the Claims and Sufficiency of the Complaint[4]

The second and third *Eitel* factors require the Court to consider "the merits of [the petitioner's] substantive claim, [and] the sufficiency of the complaint . . . ." *Eitel*, 782 F.2d at 1471. In assessing these two factors, the Court must accept all well-pleaded facts in the Petition as true. *TeleVideo Sys.*, 826 F.2d at 917–18. However, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The Court finds that these factors favor Petitioner.

"[T]he LMRA allows labor unions representing employees in an industry affecting commerce to bring lawsuits in federal court when they believe an employer has violated [a] labor contract." *Regional Local Union No. 846 v. Gulf Coast Rebar, Inc.*, 83 F. Supp. 3d 997, 1010 (D. Or. 2015). "An employer violates the contract when it refuses to implement an arbitration award made in accordance with the parties' contractual grievance process." *Id.* On review of a petition to confirm an arbitration award, "the appropriate question for a court to ask when determining whether to enforce a labor arbitration award interpreting a collective bargaining agreement is a

---

[4] The Court will analyze the second and third factors jointly.

simple binary one: Did the arbitrator look at and construe the contract, or did he not?" *Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 532 (9th Cir. 2016). In other words, the essence of the task of federal courts in reviewing arbitrations under the LMRA is "to review the procedural soundness of the arbitral decision, not its substantive merit." *Hawaii Teamsters and Allied Workers Union, Local 996 v. United Parcel Service*, 241 F.3d 1177, 1181 (9th Cir. 2001); *see also United Food & Commercial Workers International Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995) ("In this circuit, because federal labor policy strongly favors the resolution of labor disputes through arbitration, '[j]udicial scrutiny of an arbitrator's decision is *extremely* limited.'") (quoting *Stead Motors v. Automotive Machinists Lodge*, 886 F.2d 1200, 1208 n.8 (9th Cir. 1989) (en banc)). An arbitration award must be confirmed "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Van Waters & Rogers, Inc. v. International Brotherhood of Teamsters*, 56 F.3d 1132, 1136 (9th Cir. 1995*)* (citation modified) (quoting *Van Waters & Rogers Inc. v. International Brotherhood of Teamsters, Local 287*, 913 F.2d 736, 739 (9th Cir. 1990)).

The Court finds that Petitioner has provided sufficient evidence to show that the Labor-Management Committee, as the arbitrator, construed and applied the Agreement in resolving Petitioner's grievances. First, minutes of the Labor-Management Committee meeting reference specific provisions of the Agreement that Respondent violated, and that the parties were in agreement as to the application of the cited Agreement provisions. *See, e.g.*, Hutzenbiler Decl. Ex. G, at 3 ("The parties agree that [Respondent] violated sections 3.04(a) and 3.04(b) [of the Agreement] and will compensate [employee] McGaw with a one-time lump sum payment of $25,103.64 for the three violations."). The parties' grievance resolutions also cite relevant

9 – OPINION & ORDER

provisions of the Agreement and explain how Respondent violated those provisions. *See, e.g.*, Hutzenbiler Decl. Ex. H, at 1 ("[Respondent] violated section 3.04(b) of [the Agreement] for not paying [employee] Cecconi his final paycheck on or before 5/24/24 . . . ."). The Court therefore finds the Labor-Management Committee looked at and construed the Agreement in drafting the arbitration awards here. Accordingly, the second and third *Eitel* factors fall in Petitioner's favor.

C.    Sum of Money at Stake

The fourth *Eitel* factor considers the amount of money at stake in relation to the defendant's conduct. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016). Default judgment is discouraged where "the money at stake in the litigation is substantial or unreasonable." *Bd. of Trs. v. Core Concrete Const., Inc.*, C 11-02532 LB, 2012 WL 380304, *4 (N.D. Cal. Jan. 17, 2012), *report and recommendation adopted*, 2012 WL 381198 (N.D. Cal. Feb. 6, 2012); *see also Eitel*, 782 F.2d at 1472 (finding that the district court did not abuse its discretion in denying a motion for default judgment where the plaintiff sought almost $3 million in damages).

Here, the amount of money at stake here—$33,450.48—is significant. *See* Pet'r's Mot. 5; Hutzenbiler Decl. Ex. H (signed grievance resolutions totaling $33,450.48 in damages). However, the money at issue spans four grievances that impact eight employees, and each award appears proportionate to Respondent's conduct. Specifically, Respondent owes employee Cecconi $4,684.68, Hutzenbiler Decl. Ex. H, at 1, employee Johnston $1,860.36, *id.* at 2, 4, and employees Verber, Bickford, Wycoff, Sadberry, and Vierra $360.36 each, *id.* at 4. Respondent did not challenge the late payments during the Labor-Management Committee meeting on October 11, 2024. *See generally* Hutzenbiler Decl. Ex. G. Indeed, agents for Respondent acknowledged the late payments. *See, e.g.*, *id.* at 1 ("[Respondent] acknowledged the late

10 – OPINION & ORDER

payment, and provided several reasons as to why it occurred."). The Court finds that, in relation to the seriousness of this alleged conduct, the sum of money at stake in this matter does not weigh against granting Petitioner's Motion.

D.    Possibility of Dispute Regarding Material Facts

The fifth *Eitel* factor is "the possibility of a dispute concerning material facts . . . ." *Eitel*, 782 F.2d at 1471–72. This *Eitel* factor falls in Petitioner's favor. This matter was already adjudicated in arbitration, and Petitioner offers documentation memorializing the parties' agreements. *See, e.g.*, Hutzenbiler Decl. Ex. G, at 3 (minutes reflecting that "[t]he parties agree that [Respondent] violated sections 3.04(a) and 3.04(b) and will compensate [employee] McGaw with a one-time lump sum payment of $25,103.64"). The Court accordingly finds that Petitioner's allegations leave little room for dispute. Indeed, during the Labor-Management Committee meeting on October 11, 2024, agents for Respondent did not challenge its purported violations of the Agreement. *See, e.g.*, Hutzenbiler Decl. Ex. G, at 1 ("[Agents for Respondent] acknowledged the late payment [to employee Cecconi], and provided several reasons as to why it occurred."); *id.* at 3 ("[Agents for Respondent] acknowledged the two pay issues and delayed termination pay [as to employee McGaw] and provided several reasons as to why it occurred."); *see also Bunge*, 2019 WL 8953358, at *4 ("[The petitioner] seeks to enforce an arbitration award . . . Even if the defendants have a different view of the underlying facts, the facts material to the recognition, confirmation, and enforcement of the Award appear to be undisputable."). The Court finds that a genuine dispute of material fact in this matter would be unlikely and that this factor therefore favors Petitioner.

///

///

11 – OPINION & ORDER

E.    Default Due to Excusable Neglect

The sixth *Eitel* factor is whether Respondent's default was due to excusable neglect. *Eitel*, 782 F.2d at 1472. "Excusable neglect is unlikely when a defendant is properly served." *Dowling Energy Co. v. K&K Glob., Inc.*, No. 8:25-CV-00325-AH (JDEX), 2025 WL 2633078, at *4 (C.D. Cal. July 31, 2025); *see also N. Am. Co. for Life & Health Ins. v. Reed*, No. 3:24-CV-01053-SB, 2025 WL 459670, at *9 (D. Or. Jan. 27, 2025) ("Considering [the plaintiff's] declarations regarding its efforts to contact and serve [the defendant], it is unlikely that [the defendant's] default was due to excusable neglect.") *report and recommendation adopted*, 2025 WL 553579 (D. Or. Feb. 18, 2025). Respondent was served with a summons and petition on May 29, 2025. *See* Aff. of Service of Summons Issued, ECF No. 6. The Court also granted additional time for Respondent to obtain counsel, Order, ECF No. 11, yet Respondent failed to do so, *see* Movant Malary Notice 1 ("According to multiple law firms . . . [Respondent] has not been able to secure counsel due to the fact the arbitration by NECA and [Petitioner] is binding and final, therefore there is nothing [the law firms] can do to alter the outcome of the grievances."). The Court finds that the possibility of excusable neglect is minimal and that this factor favors Petitioner.

F.    Policy Favoring Decisions on Merits

The seventh *Eitel* factor is the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1472. Although "[c]ases should be decided upon their merits whenever reasonably possible," *id.*, "courts have consistently concluded that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. Where defendants have failed to appear or respond in a given matter, a decision on the merits is impossible." *Joe Hand Prods. v. Holmes*, No. 2:12-CV-00535-SU, 2015 WL 5144297, at *8 (D.

12 – OPINION & ORDER

Or. Aug. 31, 2015) (citation modified). Here, as explained above, Respondent failed to appear in this matter. As a result, the policy favoring decisions on the merits does not preclude the Court from entering default judgment against Respondent here.

* * *

The Court finds that the majority of the *Eitel* factors favor Petitioner and therefore finds that entering default judgment against Respondent is proper.

## IV.    Damages

Petitioner must prove that it is entitled to the damages it seeks. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011). Although the well-pleaded factual allegations in the Petition are taken as true, allegations relating to damages are not. *See TeleVideo Sys.*, 826 F.2d at 917–18 ("[F]actual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). The Court finds that Petitioner sufficiently proves that it is entitled to collect on the arbitration awards, and that it is entitled to pre- and post-judgment interest. Petitioner, does not, however, sufficiently prove its request for attorney fees.

### A.    Arbitration Awards

Petitioner first seeks confirmation of the Labor-Management Committee's awards and an order for Respondent to pay $33,450.48 in damages to Petitioner. Pet'r's Mot. 2. In support of its request, Petitioner provides uncontested evidence that it obtained several arbitration awards stemming from four grievances and spanning eight of Respondent's employees totaling $33,450.48. *See* Hutzenbiler Decl. Ex. H (signed grievance resolutions). This is the same amount which Respondent allegedly owes according to the Petition. *See* Pet. ¶ 16. The Court finds that Petitioner supports its claim for relief. *See Dowling Energy Co.*, 2025 WL 2633078, at *5 ("[The

petitioner] obtained an arbitration award of [amount] against [the respondents] . . . The Petition here specifically requests that amount[, and] Petitioner now seeks that amount with its [motion for default judgment]. . . . Therefore, [the petitioner] has adequately supported its claim for relief of a sum certain."); *Beijing Y-Axis Int'l Trading Co. v. Mei Body Care Spa*, No. SACV182243JVSJDEX, 2019 WL 2880415, at *5 (C.D. Cal. Mar. 28, 2019) ("[The plaintiff] obtained an arbitration award of $272,913.16 against [the defendant] for its breach of two contracts between the parties . . . Therefore, [the plaintiff] adequately supports its claim for relief of a sum certain.").

> B.    Interest

Petitioner also asks the Court to apply "9% interest per annum from October 11, 2024 (the date of the awards)." Pet'r's Mot. 5. The Court grants this request.[5]

"Prejudgment interest ordinarily runs (if at all) up to the date of final judgment, at which point postjudgment interest begins to run." *SCIE LLC v. XL Reinsurance Am., Inc.*, 397 F. App'x 348, 353 (9th Cir. 2010). The Ninth Circuit has not discussed the factors a court should consider in deciding whether to award pre-judgment interest in LMRA actions. *USF Reddaway, Inc. v. Teamsters Union, Local 162*, 230 F. Supp. 2d 1180, 1182 (D. Or. 2001). But "[i]t is well-established that courts have discretion to award prejudgment interest in actions brought under Section 301 of the LMRA." *Id.* at 1183. Post-judgment interest is appropriate on a money judgment in a civil case recovered in a district court, 28 U.S.C. § 1961(a), and accrues on the entire amount of the judgment, including pre-judgment interest, attorney fees, and costs, *see Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290–91 (9th Cir. 1995).

---

[5] The Court interprets Petitioner's request as one for both pre-judgment and post-judgment interest.

14 – OPINION & ORDER

The Court first finds that Petitioner is entitled to pre-judgment interest. While the LMRA does not state whether a prevailing labor organization may recover pre-judgment interest, "it is appropriate for the Court to look to state law because federal law does not specify a rate for prejudgment interest." *USF Reddaway*, 230 F. Supp. 2d at 1183–84. Under Oregon law, the applicable pre-judgment interest rate is nine percent per annum. *See* Or. Rev. Stat. § ("ORS") 82.010(1)(a) (providing that the applicable rate of interest for "[a]ll moneys after they become due" is nine percent per annum "if the parties have not otherwise agreed to a rate of interest"). The Court therefore grants Petitioner's request for pre-judgment interest at the applicable rate of nine percent.[6]

Petitioner is also entitled to post-judgment interest at the same rate of nine percent. Normally, under 28 U.S.C. § 1961, post-judgment interest "shall be calculated . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *See also SCIE*, 397 F. App'x at 353 ("Postjudgment interest runs at the appropriate federal rate . . . ."). But where there is evidence of "a mutual intent by the parties to have pre- and post-judgment interest calculated at the contract interest rate[,]" courts defer to the parties' agreement. *Citicorp Real Est., Inc. v. Smith*, 155 F.3d 1097, 1108 (9th Cir. 1998) ("[T]he parties specifically agreed that the contract rate of interest [of ten percent] would be applied even after judgment was entered. . . . Accordingly, we affirm the district court's grant of post-judgment interest based on the mutually agreed upon contract rate set forth in the arbitration award and the

---

[6] The Court adds that the pre-judgment interest rate of nine percent also appears to be the rate to which the parties agreed in the Agreement in light of the many references to Oregon law. *See, e.g.*, Hutzenbiler Decl. Ex. A, at 16 ("Per Oregon State Law, when an employer has notice that an employee has not been paid in full on a regular pay day . . . the employer shall pay the employee the unpaid amount no later than the next regular payday . . . .").

15 – OPINION & ORDER

promissory notes."). Here, in the Agreement, the parties appear to have opted into rates provided by Oregon law and "specifically waive[d] their right to have post-judgment interest calculated at the federal . . . rate . . . ." Hutzenbiler Decl. Ex. A, at 45. Accordingly, the Court grants Petitioner's requested post-judgment interest at nine percent.

C.    Attorney Fees

Petitioner argues briefly that it is also entitled to attorney fees. Pet'r's Mot. 4. But Petitioner makes no argument and cites no authority to support its position. Additionally, the party seeking an award of attorney fees "has the burden of submitting billing records[,]" which Petitioner has not done. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Because Petitioner has made no argument as to why it is entitled to attorney fees, the Court denies Petitioner's request with leave to file a timely motion for attorney fees. *See* Fed. R. Civ. P. 54(d)(2)(i) (motions for attorney fees must be filed no later than 14 days after the entry of judgment).

### CONCLUSION

The Court GRANTS IN PART Petitioner's Motion for Default Judgment [18]. The Court grants Petitioner leave to file a motion for attorney fees within 14 days after the Court enters judgment in this matter.

IT IS SO ORDERED.

DATED this ___8th___ day of June, 2026.

AMY M. BAGGIO
United States District Judge

16 – OPINION & ORDER